Peck, J.
delivered the opinion of the court.
The scire facias recites, that at the January term, 1833, John Dwyer recovered judgment against Harper, for the sum of $580, and costs of suit, $10 314; for which there was issued against said Harper, a writ of capias ad satis-faciendum, bearing test the third Monday of January aforesaid; that the same was returned by the sheriff “not found in my county;” that at the time of serving the ca-pias ad respondendum on Harper, Foster and Trousdale became bail of said Harper, as the act requires, in the penal sum of $1500, dated 4th August, 1831, by bond, under hand and seal, payable to the sheriff, and conditioned that if said Harper should appear at the ensuing county court at the courthouse at Nashville, on the third Monday in October next thereafter, to answer, &c. then said obligation to be void; otherwise to be in force. Said bond was assigned as the law requires. Then follows the command to make known to said Foster and Trousdale, to appear and show cause why said Dwyer should not have judgment and execution against them, &c. as bail. This writ is made known; they appeared, and for defence put in the following plea: they say, that the plaintiff, his aforesaid action ought not to have, because they say said plaintiff did not make oath as required by the act of assembly passed 14th December, 1831, entitled an actio abolish imprisonment for debt, except in cases of fraud, previous to suing out said writ of capias ad satisfaciendum mentioned in said scire facias, nor any time since; and this they verify and pray judgment.
To this plea, plaintiffs filed a general demurrer; on argument, the county court gave judgment for the defen- *538 ^ants’ both parties consenting, an appeal in the nature of a writ of error is taken to this court.
This question has been ably argued; it calls for the construction of the act of 1831, ch. 40, and in considering that act, we will enquire whether or uot the legislature intended to reach cases existing at the time the act passed.
There are no express words in the act which necessarily refer its provisions to cases in court at the time of its passage. True, the title of the act and its preamble show decisively, an intention to abolish imprisonment for debt, except in cases of fraud; the preamble supposes the existing laws unnecessarily rigorous in ordinary cases, and that the right of the creditor to hold the body of the debtor until he make render of the demand established by law, is barbarous and should be abolished. But it is to the enacting part we have to look to find the bearing of the question before us.
The first section relates to female debtors, and need not be noticed, not affecting the question.
The second section provides, that in all actions at law, to be commenced on any debt or contract made after the first day of March next, the original process shall be by summons, on which he shall be notified to appear and answer the plaintiff’s action; and that special or appearance bail shall not be required, except as afterwards provided in cases of fraud.
The third and fourth sections provide for the cases in which a plaintiff may, before action brought, or during its pendency and before judgment, have a capias, and the defendant shall be compelled to give bail to the action as before practised.
The 5th section it is more important to notice; the provisions are, “that after a judgment or decree rendered in any civil action in courts of law or equity, or before any justice of the peace, writs of capias ad satisfacien-dum, authorising the imprisonment of the person to enforce the payment of snoney, shall not issue, until the *539 plaintiff, or complainant, his agent or attorney, will make affidavit before the clerk or court from which the writ issues, or before the justice who is required to issue the same, first, that the defendant is about to remove his property, or second, that he has removed the same beyond the jurisdiction; or third, that he has made a fraudulent conveyance of his property to evade payment; or fourth, that he conceals it; or fifth, that the defendant has money in possession or within his control sufficient, &c. which he fraudulently withholds; in either of which cases the capias ad satisfaciendum may issue, as heretofore practi-sed.
Are we necessarily compelled to take these provisions in connection with the second section?
Before framing our constitution, at the time of its adoption, and since, up to the passage of this act, the unrestrained right of resorting to the ca. sa. was part of the law of the land. The makers of this law did not forget that the bill of rights, article 17, secures to every man “that all courts shall be open, and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered.” The liberty of the honest debtor was always safe under the 18th article of the same instrument. These are mentioned, not because they are thought to be in conflict with the act, when rightly construed, but to show that there was no necessity for the passage of an act which might bear the semblance of either impairing the obligation of contracts, or interfering with the administration of justice in existing cases, or changing the law of the land directly applicable to them.-. The previous laws had been long borne with; no doubt it was because the article last cited, providing that the person of the debtor (not guilty of fraud) should not be'continued in prison after delivering up his estate for the benefit of his creditors. This article always shed a benign influence over the laws which affected personal liberty for *540 ^e^t: anc^ though its provision might be forgotten by the creditor, still it was always remembered by the courts, aná an instance of oppression,in Tennessee, where the creditor acted honestly, is not remembered. This, however, does not impugn the act, though it may assist us-in coming to a proper conclusion as to its construction; for if there-were no necessity for making an act which might be applicable to suits existing at the time of its passage, then certainly the courts would not go beyond the obvious meaning, and by construction, make it apply. Read the third section with the second, and it is clear the judgment spoken of, in which the ca. sa. is forbidden, is a judgment founded on, the proceedings, to. b,e commenced as provided by the second section,.
There is no sensible way of construing' the act, but by-taking these two sections, the second and the fifth, in connection: making them stand together, as they certainly must, it follows that no right existing at the time the act passed is interfered with; that the right of the plaintiff to„pursue the bail, as was practised before the passage of the act, remained; and that there was nothing illegal irt suing out the capias ad satisfaciendum.
In comparing these sections, the construction contended for would make them inconsistent, and indeed, nonsensical ; for it would- be very incongruous- to allow the writ of capias ad respondendum until the first of March, (as by the 2d section) by which the defendant would be imprisoned until he gave bail, and then by the 5th section deprive the plaintiff of all benefit under the bond the law authorized to be taken for him. If he give no bail, he is imprisoned under the second section, up to the. time of the judgment; and then under the fifth section, he would be entitled to his discharge. These are absurdities in which we must not involve the legislature.
Let the judgment be reversed, demurrer sustained, and judgment for the plaintiff.
Judgment reversed.